Robert Chalfant (State Bar No. 203051)
LAW OFFICE OF ROBERT CHALFANT
5701 Lonetree Blvd., Suite 312
Rocklin, California 95765
Telephone: (916) 647-7728
Facsimile: (916) 930-6093
Email: robert@rchalfant.com

Attorney for Plaintiff
DANA MARIE JAMES

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA MARIE JAMES,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF OROVILLE, OFFICER ROBERT SASEK, SERGEANT ALI KHAN, OFFICER ISAAC HERRERA and DOES 1-9.<br><br>    Defendants. | Case No. 2:23-cv-00215-MCE-DMC<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS**<br><br>**DEMAND FOR JURY TRIAL** |

## I.   INTRODUCTION

Law enforcement officers have a duty to ensure the safety of the citizens they are sworn to protect. This case involves a complete failure of that duty by OFFICER ROBERT SASEK, and others employed by the Oroville Police Department.

## II.   JURISDICTION & VENUE

1. This Court has original jurisdiction of the federal claims under 28 U.S.C.§ 1331 (in that they arise under the United States Constitution) and § 1343(a)(3) (in that the action is brought to address deprivations, under color of authority, of rights, privileges, and immunities secured by the United States Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

1

2.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because the acts and/or omissions stated herein occurred in the Eastern District of California.

3.  Intra-district venue is proper in the Sacramento Division of the Eastern District of California pursuant to E.D. Cal. L.R. 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Butte.

### III. EXHAUSTION

4.  DANA MARIE JAMES submitted a timely Government Claim to the CITY OF OROVILLE on October 17, 2022. The CITY OF OROVILLE rejected the claim in writing on November 1, 2022.

### IV. PARTIES

5.  Plaintiff DANA MARIE JAMES is a resident of the County of Butte, California. Plaintiff brings this action in her individual capacity on behalf of herself.

6.  Defendant CITY OF OROVILLE is a "public entity" within the definition of Cal. Gov. Code § 811.2.

7.  Defendant OFFICER ROBERT SASEK is, and at all times material herein was, a law enforcement officer employed by Defendant CITY OF OROVILLE and the Oroville Police Department, acting within the course and scope of his employment. OFFICER ROBERT SASEK is sued in his individual capacity.

8.  SERGEANT ALI KHAN is, and at all times material herein was, a law enforcement officer employed by Defendant CITY OF OROVILLE and the Oroville Police Department, acting within the course and scope of his employment. SERGEANT ALI KHAN is sued in his individual capacity.

9.  Defendant OFFICER ISAAC HERRERA was at all times material herein a law enforcement officer employed by Defendant CITY OF OROVILLE and the Oroville Police Department, acting within the course and scope of his employment. OFFICER ISAAC HERRERA is sued in his individual capacity.

///

10. Defendant DOES 1 to 9 are and/or were agents or employees of Defendant CITY OF OROVILLE and/or the Oroville Police Department, acting within the scope of that employment and under color of state law. Defendant DOES 1 to 9 true and correct names and identities are not currently known. Defendant DOES 1 to 9 true and correct names and identities will be substituted when ascertained.

## V.     GENERAL ALLEGATIONS

11. At all times relevant herein, all wrongful and unlawful acts described herein were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

12. On September 1, 2022, at approximately 2:00 p.m., DANA MARIE JAMES ("Ms. James" or "Plaintiff") was arrested for trespassing (Penal Code Section 602), in Chico, California, and transported to the Butte County Jail ("Jail") in Oroville, California. Ms. James had been swimming in a local homeowner's pool during hundred-degree weather.

13. The arresting officer from the Butte County Sheriff's Department ("Sheriff's Department") observed that Ms. James was incoherent, had an altered mental status and was possibly under the influence of a controlled substance.

14. The arresting officer from the Sheriff's Department did not retrieve Ms. James' shoes during the arrest and she was transported to the Butte County Jail without any footwear.

15. Ms. James underwent the booking process at the Jail and was seen by an intake nurse at approximately 2:50 p.m. After completing the booking process, Ms. James was cited and released.

16. Ms. James displayed obvious signs and symptoms of mental and physical impairment at the time of her release from the Jail and this is recorded on Jail video.

17. Ms. James was not given a bus pass so that she could return to her home in Chico, California or provided shoes. Ms. James was simply thrown out onto the streets of the City of Oroville.

18. Ms. James was arrested a second time on September 1, 2022. This arrest occurred at the Oroville Home Depot at approximately 9:00 p.m. and was by OFFICER ROBERT SASEK

("OFFICER SASEK"), of the Oroville Police Department ("OPD") and SERGEANT ALI KHAN ("SERGEANT KHAN").

19. During her arrest at the Home Depot, Ms. James was incoherent and unable to care for herself. Ms. James was acting irrationally, had significant mental impairment including illogical and disorganized thoughts, and OFFICER SASEK and SERGEANT KHAN believed that she was under the influence of a controlled substance.

20. OFFICER SASEK and SERGEANT KHAN were also informed that Ms. James had previously been arrested that day in the same condition.

21. Because OFFICER SASEK believed that Ms. James was incapable of taking care of herself and additional calls for law enforcement assistance would continue if Ms. James remained at Home Depot, OFFICER SASEK and SERGEANT KHAN arrested Ms. James.

22. Ms. James's clothing was displaced during her arrest. SERGEANT KHAN laughed and belittled Ms. James in front of the subordinate officers that were present and employees of the store.

23. OFFICER SASEK transported Ms. James back to the Jail for booking and she was seen at approximately 10:03 p.m. by Manuel Salinas, RN. Nurse Salinas refused to admit Ms. James into the Jail until she was "medically cleared" by medical providers at Oroville Hospital.

24. Nurse Salinas' refusal to allow Ms. James to be booked was based upon Ms. James being incoherent, irrational, unable to respond to basic questions, having obvious neurologic signs and symptoms of having an altered mental status, as well as having a highly elevated blood pressure indicative of a chronic medical condition.

25. Nurse Salinas also suspected that Ms. James was possibly under the influence of a controlled substance.

26. OFFICER SASEK was present during the intake medical screening by Nurse Salinas and was informed of Nurse Salinas' observations and reasons for the Jail's refusal to admit Ms. James into custody.

27. OFFICER SASEK was also informed that Ms. James required urgent medical evaluation and treatment based upon her poor physical condition and altered mental status.

28. The Butte County Sheriff's Office, which runs and oversees the Butte County Jail, requires medical staff at the Jail to determine if arrestees have injuries or impairments at intake and booking.

29. If medical staff determines that immediate medical evaluation and treatment is needed, then the arrestee is not admitted into the Jail, but instead returned to the arresting officer pending receipt of a medical clearance certificate from off-site medical providers at Oroville Hospital.

30. Ms. James was placed back into OFFICER SASEK's patrol vehicle so that he could transport her to Oroville Hospital for the required "medical clearance."

31. OFFICER SASEK drove Ms. James to Oroville Hospital for "medical clearance" as required by the Jail's booking staff.

32. OFFICER SASEK had Ms. James remain in his vehicle while he exited the vehicle and entered Oroville Hospital.

33. OFFICER SASEK did not take Ms. James into the hospital to be seen by a medical provider as required for her to be booked into the Jail's custody.

34. Oroville Hospital has no record of admitting Ms. James for medical evaluation on September 1, 2022.

35. Instead, OFFICER SASEK cited and released Ms. James in the parking lot at Oroville Hospital even though he knew and was aware that her release was prohibited by Penal Code Section 853.6(i) and Oroville Police Department Policy ("Policy").

36. Policy 420.4.2(a), provides that reasons for non-release include: "The person arrested is so intoxicated that he/she could be a danger to him/herself or to others."

37. Policy 420.4.2(b) provides that "The person arrested requires medical examination or medical care or is otherwise unable to care for his/her own safety." (Policy 420.4.2(b)).

38. OFFICER SASEK was also required, pursuant to Oroville Police Department Policy, to obtain authorization from his Shift Supervisor to cite and release Ms. James in light of the reasons for non-release described above but failed to do so. See Policy 420.4.2.

39. OFFICER SASEK knew that Ms. James required urgent medical evaluation and

5

treatment, was possibly under the influence, and was unable to care for herself when he abandoned her in the Oroville Hospital parking lot.

40. Shortly after leaving Ms. James in the parking lot, a security guard at Oroville Hospital called OFFICER SASEK on his personal cell phone and requested that OFFICER SASEK immediately return.

41. The security guard informed OFFICER SASEK that Ms. James had been walking around the exterior of the hospital trying to open locked doors.

42. The security guard further informed OFFICER SASEK that Ms. James was "out of control" and had "barricaded" herself in a hospital bathroom.

43. The security guard was able to get Ms. James out of the bathroom and escorted her back to the parking lot at Oroville Hospital.

44. OFFICER SASEK returned within a few minutes. SERGEANT KHAN and OFFICER ISAAC HERRERA ("OFFICER HERRERA"), also employed by the Oroville Police Department, arrived on scene and the three officers had a discussion.

45. OFFICER SASEK placed Ms. James back into his patrol vehicle and drove away exiting the parking lot.

46. OFFICER SASEK then drove with Ms. James to a local gas station in Oroville. SERGEANT KHAN and OFFICER HERRERA arrived on scene at the gas station, and the three officers discussed a plan of action.

47. OFFICER SASEK, SERGEANT KHAN and OFFICER HERRERA were aware and had discussed that Ms. James was under the influence of a narcotic or alcohol, was unable to care for herself and urgently needed to be seen by a medical provider due to the possible use of controlled substances, an altered mental status, poor physical condition and an extremely elevated heart rate.

48. All three officers knew and discussed that Ms. James had been rejected by the Jail at booking because she had an urgent medical condition requiring evaluation and treatment and needed to be "medically cleared" prior to being accepted into custody at the Jail.

49. OFFICER HERRERA suggested that OFFICER SASEK take her out to a remote

area on Neal Road at the Waste Facility and abandon Ms. James at the dump.

50. SERGEANT KHAN agreed with the plan and did not object or instruct his subordinates to cease their unlawful and improper conduct even though he knew that Plaintiff's rights were being violated and had the opportunity to intervene. SERGEANT KHAN had an affirmative duty to stop the unlawful conduct of his subordinates but failed to do so.

51. OFFICER SASEK then drove Ms. James north on Highway for 15.5 miles to the area around Neal Road Recycling and Waste Facility ("Waste Facility").

52. While being transported towards Chico, Ms. James asked, "Where are we going?" and OFFICER SASEK responded, "Don't worry about it" and told her to "just shut up."

53. OFFICER SASEK parked his vehicle somewhere near the Waste Facility at approximately midnight and directed Ms. James to exit the vehicle. It was completely dark outside and Ms. James asked, "Where are we?" OFFICER SASEK responded, "You will figure it out, it's not my problem."

54. Ms. James pleaded with OFFICER SASEK to "take me home," prior to OFFICER SASEK getting back into his patrol vehicle and flooring the gas pedal, which threw dirt and gravel directly at Ms. James.

55. Ms. James was now all alone on Neal Road. It was dark out and there were no streetlights. Ms. James had no phone, no water, no shoes, no flashlight and no idea where she was. OFFICER SASEK just drove away discarding her on Neal Road outside of the dump.

56. OFFICER SASEK, SERGEANT KHAN and OFFICER HERRERA treated Ms. James as though she was garbage. Their heartless decision to abandon her at the dump would warrant criminal charges if they had abandoned a dog or cat. (See Penal Code Section 597s).

57. With no alternatives, Ms. James began walking on the shoulder of the road in the direction that OFFICER SASEK had used to arrive at this location.

58. As Ms. James walked up the road near what is now known to be Franklin Construction, she was struck on her right side by a passing vehicle and was sent flying down an embankment into several large boulders where she remained in and out of consciousness and severely injured for approximately 10 hours.

59. The vehicle that struck Ms. James did not stop to render assistance and instead fled from the scene of the accident.

60. Ms. James sustained catastrophic physical and internal injuries after being hit by the vehicle. Her clothes were completely shredded, and she had bruises all over her body. Ms. James needed emergency medical care but was unable to move.

61. At approximately 9:00 a.m. on September 2 (the next day), Ms. James summoned the strength to crawl up the embankment where she had remained in and out of consciousness all night and was seen by workers employed at the Franklin Construction yard. They immediately recognized the seriousness of her injuries, provided water and assistance and called 911.

62. Butte County Sheriff's Department officers arrived and insulted Ms. James by asking if her boyfriend had beaten her up. Ms. James informed responding officers that she had been hit by a vehicle and needed emergency medical care and treatment. The Butte County Sheriff's Department failed to conduct any inquiry into how Ms. James had arrived at that location or who was responsible for hitting her with their vehicle.

63. Ms. James was transported by ambulance to Enloe Medical Center in Chico, California.

64. Ms. James was in the ICU Unit at Enloe for approximately seven (7) days after being hit by the vehicle. Ms. James remained hospitalized for approximately 35 days after being dumped by OFFICER SASEK on Neal Road and struck by a vehicle.

65. Based on the severe internal injuries that Ms. James sustained, medical providers were forced to remove 30 to 40 percent of her colon, and approximately two feet of her small intestine.

66. Ms. James has also been informed that due to the internal injuries and removal of a portion of her small intestine and a portion of her colon, she will likely be required to wear a colostomy bag for life. Ms. James is currently only 52 years old.

67. Ms. James has had multiple surgeries, and due to complications from the surgeries, developed sepsis. The infection was so severe that the skin on her right foot began deteriorating and her toes turned black. Ms. James recently had two of her toes amputated on or about June 22,

2023. Ms. James continues to experience problems and pain after the amputation.

68. Ms. James was on dialysis twenty-four hours a day while at Enloe as doctors fought to treat the infection.

69. OFFICER SASEK was on duty and in a marked patrol vehicle at the time of this incident. It is believed he was wearing a body-worn camera while transporting Ms. James. However, OFFICER SASEK did not activate his body worn camera while transporting Ms. James or dropping her off on Neal Road.

70. Additionally, the patrol vehicle was equipped with GPS/AVL tracking capabilities which would show the officer's locations, and confirm that he drove to Neal Road, as well as an in-car camera system, RMS device and personal cell phone that would also show his locations during the relevant time periods. OFFICER SASEK turned off the vehicle's GPS tracking capabilities so he could not be monitored while he discarded Ms. James at the dump.

71. OFFICER SASEK did not notify the radio dispatcher of his departure time and beginning mileage when transporting Ms. James, a female arrestee.

72. The CITY of OROVILLE has failed to enact a policy that requires officers to complete this simple task prior to transporting female arrestees.

73. OFFICER SASEK also turned off his cell phone so that any GPS data that would record and track his movements could not be obtained or reviewed after abandoning Ms. James.

74. After abandoning Ms. James on Neal Road at approximately midnight, OFFICER SASEK returned to his office the following day and completed his arrest report for his arrest of Ms. James at the Oroville Home Depot and submitted it to the Butte County District Attorney for prosecution.

75. OFFICER SASEK did not inform the District Attorney that he had returned to the hospital and placed Ms. James back into his patrol vehicle or that he had dumped and abandoned Ms. James on Neal Road.

76. Ms. James submitted a Citizen's Complaint after her release from Enloe Medical Center. OFFICER SASEK was interviewed by an investigator hired by the City of Oroville to conduct an Internal Affairs investigation.

77. OFFICER SASEK admitted that he drove Ms. James to Neal Road and abandoned her without shoes, a cell phone or water and that he knew that she required urgent medical care at the time of his arrest. OFFICER SASEK REMAINS employed by the CITY OF OROVILLE.

78. OFFICER HERRERA was also interviewed by the INTERNAL AFFAIRS Investigator and admitted that he made the statement that OFFICER SASEK should take her out to Neal Road. OFFICER HERRERA has since been terminated by the CITY OF OROVILLE.

79. Based on the circumstances described above, Ms. James has experienced and will continue to experience pain and suffering, and mental and emotional distress for the rest of her life. Ms. James has been diagnosed with PTSD as a result of OFFICER SASEK's misconduct. Ms. James has incurred past medical expenses and costs and will be incurring future medical expenses as she will require care and treatment for the remainder of her life.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

"State Created Danger"

(42 U.S.C. Section 1983)

*Against Defendants SASEK, KHAN, HERRERA and DOES 1-9*

80. Plaintiff DANA MARIE JAMES re-alleges and incorporates by reference paragraphs 1 through 79, as though fully set forth herein.

81. The actions of defendants OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1-9 alleged herein, including but not limited to devising and executing a plan to discard and abandon Ms. James, who was under their control and in their custody, and who required urgent medical evaluation and treatment, placed Ms. James in a worse position than she was in prior to their involvement.

82. The affirmative acts of OFFICER SASEK, SERGEANT KHAN and OFFICER HERRERA and DOES 1-9, of dumping and leaving Ms. James on the side of the road in the dark, and the possibility that she would be struck by a passing vehicle traveling at high speed, was a foreseeable and direct harm of their actions.

83. Defendants willfully disregarded the known and obvious consequence of their

actions and were deliberately indifferent to the safety of Ms. James. OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1 to 9 created a danger that would not have existed absent such conduct. This affirmative conduct led to the deprivation of Ms. James constitutional rights under the Fourteenth Amendment.

84. As a direct and proximate result of said acts and/or omissions by defendants, Ms. James suffered injuries and damages as alleged herein and to which Ms. James is entitled to recover damages for past and future medical care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

85. The aforementioned acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of Ms. James, thereby entitling plaintiff to an award of exemplary and punitive damages according to proof against OFFICER SASEK, SERGEANT ALI KHAN, OFFICER HERRERA and DOES 1-9.

## SECOND CLAIM FOR RELIEF

### "Deliberate Indifference to Health/Safety"

### (42 U.S.C. Section 1983)

*Against Defendants SASEK, KHAN, HERRERA and DOES 1 to 9*

86. Plaintiff DANA MARIE JAMES re-alleges and incorporates by reference paragraphs 1 through 85, as though fully set forth herein.

87. The actions of Defendant OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1 to 9, to cite and release Ms. James in the hospital parking lot while knowing that the Butte County Jail had required that Ms. James be "medically cleared" was an intentional decision to deprive Ms. James of urgently needed medical care, evaluation and treatment.

88. The actions of Defendant OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1 to 9, to drive Ms. James approximately 15 miles outside of the City of Oroville's city limits and abandon her on the road near the Waste Facility at approximately midnight, with no shoes, flashlight, water, or phone and deprive her of urgently needed medical evaluation and treatment put Ms. James at risk of suffering serious harm.

89. OFFICER SASEK, SERGEANT ALI KHAN, OFFICER HERRERA and DOES 1 to 9 did not take reasonable available measures to abate or reduce the risk of serious harm, even though any reasonable officer would have known that Ms. James required urgent medical care and treatment, was unable to care for herself in downtown Oroville and clearly had no ability to care for herself on a dark rural road in Butte County.

90. OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1 to 9 could have just taken Ms. James into Oroville Hospital for evaluation and treatment, as required by the Jail, and their failure to do so caused Plaintiff's injuries and violated her rights under the Fourteenth Amendment.

91. As a direct and proximate result of said acts and/or omissions by defendants, Ms. James suffered injuries and damages as alleged herein and to which Ms. James is entitled to recover damages for past and future medical care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

92. The aforementioned acts and/or omissions of said defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of Ms. James, thereby entitling plaintiff to an award of exemplary and punitive damages according to proof against OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1-9.

### THIRD CLAIM FOR RELIEF

#### "Failure to Train"

#### (42 U.S.C. Section 1983)

*Against CITY OF OROVILLE*

93. Plaintiff DANA MARIE JAMES re-alleges and incorporates by reference paragraphs 1 through 92, as though fully set forth herein.

94. The acts and omissions of law enforcement officers employed by the CITY OF OROVILLE deprived Plaintiff of her rights under the Fourteenth Amendment as explained above.

95. The training policies of Defendant CITY OF OROVILLE were not adequate to prevent known or obvious consequences of its failure to train its employees. Specifically, the CITY OF OROVILLE did not train its officers, including OFFICER SASEK, SERGEANT

KHAN, OFFICER HERRERA or DOES 1 to 9 on:

    (a)    Obtaining "Medical Clearance" for arrested individuals needing urgent evaluation after the Jail refuses to allow individuals to be booked into custody;

    (b)    Determining whether to cite and release an individual under Policy 420.4.2;

    (c)    How to evaluate and address an arrestee's "reasons for non-release" as set forth in Policy 420.4.2, subsections (a) and (b);

    (d)    The requirement of obtaining a Shift Supervisor's authorization to cite and release an individual when "reasons for non-release" exist; and,

    (e)    That its' officers should never cite and release an individual that requires "Medical Clearance" from the Jail, is under the influence and that is unable to care for themselves outside of City limits on a dark road at approximately midnight.

96.    Defendant CITY OF OROVILLE was deliberately indifferent to the known or obvious consequences as the constitutional violations here were a highly predictable consequence of its failure to train. The deficient training program here is closely related to the alleged constitutional violation such that the violation would have been avoided under a program that was not deficient.

97.    The failure of Defendant CITY OF OROVILLE to provide adequate training caused the deprivation of the Plaintiff's rights by OFFICER SASEK, SERGEANT ALI KHAN, OFFICER HERRERA and DOES 1 to 9.

98.    As a direct and proximate result of said acts and/or omissions by defendants, Ms. James suffered injuries and damages as alleged herein and to which Ms. James is entitled to recover damages for past and future medical care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

**FOURTH CLAIM FOR RELIEF**

**"Supervisory Liability"**

**(42 U.S.C. Section 1983)**

*Against Sergeant Ali Khan and DOES 1 to 9*

99.    Plaintiff DANA MARIE JAMES re-alleges and incorporates by reference

paragraphs 1 through 98, as though fully set forth herein.

100. Sergeant ALI KHAN acted under color of law at all times mentioned herein and was a supervisor of Defendants OFFICER SASEK and OFFICER HERRERA.

101. Sergeant ALI KHAN directed his subordinates, OFFICER ROBERT SASEK and OFFICER HERRERA, to deprive Plaintiff of her particular rights under the U.S. Constitution, and knowingly refused to terminate a series of acts by his subordinates that he knew or reasonably should have known would cause the deprivation of plaintiff's rights.

102. Sergeant ALI KHAN failed to act to prevent OFFICER SASEK and OFFICER HERRERA from engaging in such conduct.

103. As a direct and proximate result of said acts and/or omissions by defendants, Ms. James suffered injuries and damages as alleged herein and to which Ms. James is entitled to recover damages for past and future medical care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

104. The aforementioned acts and/or omissions of said SERGEANT ALI KHAN were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of plaintiff, thereby entitling plaintiff to an award of exemplary and punitive damages according to proof against defendant KHAN and DOES 1 to 9.

**FIFTH CLAIM FOR RELIEF**

"Bane Act"

**(California Civil Code Section 52.1 et. seq.)**

*Against Defendants SASEK, KHAN, HERRERA, DOES 1 to 9 and CITY OF OROVILLE*

105. Plaintiff DANA MARIE JAMES re-alleges and incorporates by reference paragraphs 1 through 104, as though fully set forth herein.

106. The actions of Defendants OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA, CITY OF OROVILLE and DOES 1 to 9, as alleged herein, including but not limited to the Officer's affirmative act of dumping Ms. James on a rural road at approximately midnight while needing medical evaluation and treatment, denying her medical care and being deliberately indifferent to her health and safety and failing to properly train its officers to prevent these

constitutional violations, were unreasonable and unlawful violations of the U.S. Constitution as well as state law. Defendants' conduct is therefore actionable under California Civil Code Section 52.1 et seq., the "Bane Act."

107. As a direct and proximate result of said acts and/or omissions by Defendants, Plaintiff DANA MARIE JAMES seeks to recover special and general damages. Plaintiff is also entitled to recover any and all statutory penalties available as well as attorneys' fees and costs.

108. Defendant CITY OF OROVILLE is liable for the wrongful acts of Defendants OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1 to 9 pursuant to California Government Code Section 815.2(a), which provides that a public entity is liable for injuries caused by its employees within the scope of employment if the employee's acts would subject them to liability.

109. The aforementioned acts and/or omissions of said individual Defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of plaintiff, thereby entitling plaintiff to an award of exemplary and punitive damages according to proof against defendants SASEK, KHAN, HERRERA and DOES 1 to 9.

## SIXTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**

**(California State Common Law)**

*Against Defendants SASEK, KHAN, HERRERA, DOES 1 to 9 and CITY OF OROVILLE*

110. Plaintiff DANA MARIE JAMES re-alleges and incorporates by reference paragraphs 1 through 109, as though fully set forth herein.

111. Defendants OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1 to 9, acting or purporting to act in the performance of their official duties as law enforcement officers knowing their conduct was unlawful. As a result of the above outrageous conduct, Ms. James suffered severe and extreme mental and emotional distress.

112. Defendant CITY OF OROVILLE is indirectly and vicariously liable, through the principles of *respondeat superior*, for injuries proximately caused by acts or omissions of its employees acting within the scope of their employment.

113. Defendants OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1 to 9's acts and/or omissions constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendants according to proof.

114. As a direct and proximate result of said tortious acts and/or omissions by Defendants, plaintiff suffered the injuries alleged herein, entitling her to special and general damages for past and future medical care and treatment and for mental and emotional distress.

## SEVENTH CLAIM FOR RELIEF

### "Negligence"

### (California State Common Law)

*Against Defendants SASEK, KHAN, HERRERA, DOES 1 to 10 and CITY OF OROVILLE*

115. Plaintiff DANA MARIE JAMES re-alleges and incorporates by reference paragraphs 1 through 114, as though fully set forth herein.

116. Defendants OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA and DOES 1 to 9 have a duty as arresting officers with a special relationship to arrestees to provide for the health, safety and welfare of arrested persons under their control and authority and failed to provide for the health, safety and well-being of Ms. James.

117. Defendant CITY OF OROVILLE had a duty to properly train its officers in how to book individuals in its care and custody into jail and to properly follow its own requirements for determining when to cite and release individuals in its custody, to obtain "medical clearance" when required by the Butte County Jail, and to prohibit the dumping of individuals that require medical evaluation and treatment and who are unable to care for themselves on rural roads outside of City limits. Said duties are defined by California State Law, law enforcement standards and CITY OF OROVILLE Police Department policies.

118. Defendants breached their respective duties, and this breach directly and proximately caused injuries and damages to Plaintiff as alleged herein.

119. As a direct and proximate result of said acts and/or omissions by Defendants OFFICER SASEK, SERGEANT KHAN, OFFICER HERRERA, DOES 1 to 9, and the CITY OF OROVILLE, Ms. James suffered injuries and damages as alleged herein and to which Ms. James

is entitled to recover damages for past and future medical care, past and future pain and suffering, and past and future mental and emotional distress.

120.  Defendant CITY OF OROVILLE is liable for the wrongful acts of Defendants OFFICER SASEK, SERGEANT KHAN, OFFICER HERERA and DOES 1 to 9 pursuant to California Government Code Section 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's acts would subject them to liability.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2. For punitive and exemplary damages against each individually named Defendant(s) in an amount appropriate to punish Defendant(s) and deter others from engaging in similar misconduct;

3. For an award of statutory penalties, pursuant to Cal. Civ. Code Section 52.1 and other statutes as may be applicable;

4. For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988, the Bane Act and as otherwise authorized by statute or law;

5. Such other and further relief as this Court may deem appropriate.


DATED: July 17, 2023                LAW OFFICE OF ROBERT CHALFANT

                                    /s/ Robert Chalfant
                                    ROBERT CHALFANT
                                    Attorney for Plaintiff DANA MARIE JAMES

///
///
///

**JURY DEMAND**

Plaintiff hereby requests a trial by jury.

DATED: July 17, 2023                    LAW OFFICE OF ROBERT CHALFANT

/s/ Robert Chalfant
ROBERT CHALFANT
Attorney for Plaintiff DANA MARIE JAMES